IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| EVELYN C. BLAND, | ) |
| Plaintiff, | ) |
| v. | ) 2:04cv1333 |
| SMS DEMAG, INC., | ) |
| Defendant. | ) |

### MEMORANDUM OPINION AND ORDER

Before the Court for consideration and disposition are PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT (*Document No. 21*), with brief in support (*Document No. 22*), Defendant's response thereto (*Document No. 25*), and Plaintiff's reply (*Document No. 29*). Also before the Court are DEFENDANT SMS DEMAG INC.'S MOTION FOR SUMMARY JUDGMENT (*Document No. 30*), with brief in support (*Document No. 31*), Plaintiff's response thereto (*Document No. 35*), and Defendant's reply (*Document No. 38*).

After considering the filings of the parties, the evidence of record and the relevant statutory and case law, Plaintiff's Motion for Summary Judgment will be granted and Defendant's Motion for Summary Judgment will be denied.

Background

Plaintiff Evelyn C. Bland ("Mrs. Bland") filed this action against Defendant SMS Demag, Inc. ("Defendant") pursuant to the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. § 1001 *et seq*. Defendant is the Plan Administrator for the SMS Demag, Inc. Health and Welfare Plan No. 501 ("the Plan"). Pltf's Stmt. of Facts at ¶ 11; Def's Resp. to Pltf's Facts at ¶ 11. Defendant has been the Plan Administrator since November of 1999. Pltf's Stmt. of Facts at ¶ 11.

On July 18, 1945, Plaintiff and Ray Bland were married. Pltf's Stmt. of Facts at ¶ 2. As of November 23, 1987, the approximate date of his retirement, Ray Bland had been employed by SMS Sutton, Inc. and its predecessors in interest for approximately thirty-seven (37) years. *Id*. at ¶ 4. SMS Sutton, Inc. later became SMS Eumenco, which is the successor-in-interest to SMS

Sutton, Inc. *Id*. at ¶ 14.

On November 23, 1987, Ray Bland entered into a Severance Agreement with SMS Sutton, Inc. *Id*. at ¶ 6. Pursuant to the Severance Agreement, and in exchange for consideration, SMS Sutton, Inc. promised that it would "include you [Ray Bland] and your spouse [Evelyn Bland] in the company medical plans for life." Pltf's Stmt. of Facts at ¶ 7. Subsequently, SMS Sutton, Inc. and SMS Eumenco included both Ray Bland and Mrs. Bland in the company medical plans. *Id*. at ¶ 8. The parties agree that "the November 23, 1987 Severance Agreement between Raymond A. Bland and SMS Sutton, Inc. is a modification to the 1987 Plan." Def's Resp. to Pltf's Facts at ¶ 12. However, Defendant contends that Mrs. Bland was never "enrolled in the plan in her own right," and that "her only status in the Plan was as the dependent of Ray Bland." Def's Resp. to Pltf's Facts at ¶ 8.

The Blands were continuously married until Ray Bland's death on July 14, 2003, after a long battle with cancer. Pltf's Stmt. of Facts at ¶ 2-3. On December 10, 2003 SMS Eumenco notified Mrs. Bland that her inclusion in the plan ceased with her husband's death and would be discontinued, but that she would be able to continue coverage, at her own expense, under COBRA until July of 2006. Def's Resp. to Pltf's Facts at ¶ 14. In a letter dated December 20, 2003, Mrs. Bland requested that SMS Eumenco, Inc. reconsider its decision to discontinue her health coverage. *See* Def's Resp. to Pltf's Facts, exh. 8. The letter reads, in part, as follows:

> There must be some mistake. My husband's severance agreement with the company clearly stated that we would both be covered for life, not his life, but both of our lives. My husband realized that his health insurance benefits were rather unique and he had been given special consideration in this area.
> \*\*\*
> When Ray was ill we spoke about the various areas of my life that would have to change when he was gone. Missing him was of course the greatest, but other financial matters also had to be addressed. Repeatedly he told me that at least I did not have to worry about my medical benefits, because I would still be covered with Sutton until my death. He had mentioned this many times over the years. It was one area that there would be no change and this gave him some sense of reassurance knowing that he would not be there to take care of me any longer. This was my husband's clear understanding when he retired, and certainly the intent of Mr. Sutton as he expressed to my husband.

*Id*.

Mrs. Bland's request for reconsideration was forwarded to Defendant, which treated her

2

request as an appeal under ERISA. Def's Stmt. of Facts at ¶ 18. Peter Fernie ("Fernie"), the Vice-President of SMS Demag., Inc. and the decisionmaker in this case, reviewed the Master Plan Document, Defendant's contract with Highmark Blue Cross Blue Shield ("the Contract"), the 1987 Plan modification set forth in the Severance Agreement, and the facts submitted by Mrs. Bland. *Id*. at ¶ 19. Fernie also considered what Defendant characterizes as "the Plan's position with respect to providing insurance to the spouses of retirees, the spouses of deceased employees and the spouses of deceased retired employees ..." *Id*. at ¶ 20. The Plan Administrator is authorized to "construe and interpret this Plan and the Plan Programs including, without limitation, correcting any defect, supplying and omitting and reconciling any inconsistency ..." *Id*. at ¶ 18.

In a letter to Mrs. Bland dated March 12, 2004, Fernie articulated his determination that Mrs. Bland was no longer eligible for health coverage under the plan. Def's Appx., exh. F. Fernie found that "the Master Plan Document defers to the eligibility provisions established by the Contract," and that Mrs. Bland did not fulfill the definition of an "Employee" under the Contract because she was not an hourly or salaried employee. *Id*. Fernie also informed Mrs. Bland that she did not qualify for coverage under the Plan as a dependent because "a dependent has standing for coverage under the Plan only through the Employee," and "there is no one to define as an Employee ..." *Id*. Significantly, Fernie's letter makes no reference whatsoever to either the existence or the language of the 1987 modification to the Plan.

Mrs. Bland's son-in-law requested a reconsideration of the denial. Def's Stmt. of Facts at ¶ 23. Fernie reconsidered and reaffirmed his earlier decision. *Id*. at ¶ 25; see also Def's Appx., exh. J. This action followed.

Standard of Review

Rule 56(c) of the Federal Rules of Civil Procedure reads, in pertinent part, as follows:

> [Summary Judgment] shall be rendered forthwith if the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law.

3

Fed. R. Civ. P. 56(c).

An issue of material fact is genuine only if the evidence is such that a reasonable jury could return a verdict for the non-moving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The court must view the facts in a light most favorable to the non-moving party, and the burden of establishing that no genuine issue of material fact exists rests with the movant. *Celotex*, 477 U.S. at 323. The "existence of disputed issues of material fact should be ascertained by resolving all inferences, doubts and issues of credibility against the moving party." *Ely v. Hall's Motor Transit Co.*, 590 F.2d 62, 66 (3d Cir. 1978) (*quoting Smith v. Pittsburgh Gage & Supply Co.*, 464 F.2d 870, 874 (3d Cir. 1972)).

Discussion

A claim for benefits under ERISA, § 502(a)(1)(B) must be brought against the plan itself or the administrator with discretionary authority and responsibility for the denial of the claim. *See* 29 U.S.C. § 1132(d)(2). Although ERISA does not provide the standard of review for an action by a participant or beneficiary alleging that she has been denied benefits, in *Firestone Tire & Rubber Co. v. Bruch,* 489 U.S. 101 (1989), the Supreme Court held that the appropriate standard for actions challenging denials of benefits is a *de novo* standard *unless* the plan gives the "administrator or fiduciary discretionary authority to determine eligibility for benefits or to construe the terms of the plan," in which case an abuse of discretion or arbitrary and capricious[1] analysis is appropriate. *See Mitchell v. Eastman Kodak Co.,* 113 F.3d 433, 437 (3d Cir.1997) (citing *Firestone,* 489 U.S. at 115). The *Firestone* court qualified its holding by noting that, "if a benefit plan gives discretion to an administrator or fiduciary who is operating under a conflict of interest, that conflict must be weighed as a factor" in determining whether there is an abuse of

---

[1] Under the arbitrary and capricious standard, an eligibility determination will only be overturned if it is "without reason, unsupported by substantial evidence or erroneous as a matter of law" and, the scope of the review is narrow -- the Court is prohibited from substituting its judgment for that of the administrator. *See Abnathya v. Hoffman-La Roche, Inc.*, 2 F.3d 40, 45 (3d Cir. 1993). The arbitrary and capricious standard is "essentially the same as the abuse of discretion standard." *Id.* at n. 4 (citing *Nazay v. Miller,* 949 F.2d 1323, 1336 (3d Cir. 1991)).

discretion. *Firestone*, 489 U.S. at 115.

Neither party has addressed whether the Plan Administrator acted under a conflict of interest; both simply argue that Fernie's decision was, or was not, arbitrary and capricious. Moreover, the Court has found no evidence of record which suggests that the Plan Administrator acted under a conflict of interest. Therefore, the Court will review the merits of Fernie's decision under the traditional arbitrary and capricious standard.[2]

The Court finds and rules that Fernie's decision that Mrs. Bland is not eligible for health coverage under the Plan is arbitrary and capricious. First, as mentioned above, in Fernie's March 12, 2004 letter to Mrs. Bland, he did not address the meaning of the 1987 Plan modification, which promised that both Mr. & Mrs. Bland would be included "in the company medical plans for life." The 1987 Plan modification is also not referenced or analyzed in the subsequent letter to Mrs. Bland's son-in-law. In the Court's view the meaning of the 1987 Plan modification is plain and requires no interpretation: Ray and Evelyn Bland were to be included in the company medical plans for life, and Mrs. Bland's coverage was not dependent upon whether Ray Bland was alive. *See Dewitt v. Penn-Del Directory Corp.*, 106 F.3d 514, 517 (3d Cir. 1997) ("Because we believe that the Plan Administrator's interpretation of the Plan ... controverts the plain language of the Plan, we conclude that the Administrator acted arbitrarily and capriciously ."). Moreover, there is no doubt that Ray Bland believed that his wife would be covered by the Plan until her death when he entered into the Severance Agreement with SMS Sutton, Inc., regardless of when he may die.

Defendant's argument, distilled to its essence, is that Fernie's decision cannot be arbitrary and capricious because he had the discretion to construe and interpret the Plan, and because he considered the Master Plan Document, the Contract and other information when he made his

---

[2] Additionally, there is no indication of any sort of "procedural irregularity" or employer interference with the Plan Administrator's decisionmaking process which would warrant heightened arbitrary and capricious review. *See Kosiba v. Merck & Co.,* 384 F.3d 58 (3d Cir. 2004).

decision. *See* Def's Brief in Support of its Motion for Summary Judgment at 9-12. The Court does not agree. In the Court's view Fernie has given undue weight to Plan documents which became effective over a decade after the 1987 Plan modification was contracted. Indeed, it appears that Fernie has endeavored to interpret the 1987 Plan modification to not exist because his interpretation is not consistent with later definitions of "employee" or "dependent" under later Plan documents.[3] Therefore, the Court will reverse the decision of the Plan Administrator and order that Mrs. Bland's health care coverage under the Plan be reinstated.

### Conclusion

For the reasons hereinabove stated, Plaintiff's Motion for Summary Judgment will be granted and Defendant's motion for summary judgment will be denied. An appropriate Order follows.

McVerry, J.

---

[3] The Master Plan Document considered by Fernie in his letter became effective on January 1, 2003, and the Contract became effective as of October 1, 2002. Fernie Aff. at ¶ 9; Appendix in Support of Defendant's Response to Plaintiff's Motion for Summary Judgment, exh. 5.

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| EVELYN C. BLAND, ) | |
| ) | |
| Plaintiff, ) | |
| v. ) | |
| ) | 2:04cv1333 |
| SMS DEMAG, INC., ) | |
| ) | |
| Defendant. ) | |

## ORDER OF COURT

AND NOW, this 26th day of August, 2005, in accordance with the foregoing Memorandum Opinion it is hereby **ORDERED, ADJUDGED and DECREED** as follows:

1) Plaintiff's Motion for Summary Judgment (*Document No. 21*) is **GRANTED**;

2) Defendant SMS Demag Inc.'s Motion for Summary Judgment (*Document No. 30*) is **DENIED**;

3) Defendant is hereby ORDERED to reinstate full health care coverage for Evelyn C. Bland under the SMS Demag, Inc. Health and Welfare Plan No. 501 as it existed prior to the death of Ray Bland, and Defendant is prohibited from terminating or reducing Plaintiff's coverage in the future; and

4) Plaintiff may submit an appropriate petition and brief in support of her request for an award of monetary damages and prejudgment interest, as well as attorney's fees and costs pursuant to 29 U.S.C. § 1132(g)(1), on or before September 9, 2005. Defendant may file a response and brief in opposition within ten (10) days of Plaintiff's filing.

BY THE COURT:

s/ Terrence F. McVerry
United States District Court Judge

cc: William D. Clifford, Esquire
Email: wclifford@dmclaw.com

Kenneth P. McKay, Esquire
Email: ken@mckaylaw.com

Joan Shinavski, Esquire
Email: joan@mckaylaw.com